UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

THOMAS A. HENDERSON,                    :

                  Plaintiff,     :      10 Civ. 2182 (PAC)(HBP)

   -against-                         :      REPORT AND
                             RECOMMENDATION
BRIAN FISCHER, in his               :
capacity as Commissioner of
of New York DOCS, et al.,           :

                Defendants.    :

----------------------------------X


       PITMAN, United States Magistrate Judge:


       TO THE HONORABLE PAUL A. CROTTY, United States

District Judge,


I.   Introduction


       In an Amended Complaint filed on April 22, 2010 (Docket

Item 4), plaintiff Thomas Henderson, pro se, brings this action

for damages pursuant to 42 U.S.C. § 1983 against Brian Fischer

and Anthony J. Annucci, the current Commissioner and Deputy

Commissioner of the New York State Department of Corrections and

Community Supervision ("DOCS"), respectively, Glenn S. Goord, a

former DOCS Commissioner, and Lucien J. LeClaire, Jr., a former

acting DOCS Commissioner.  Plaintiff challenges the imposition

and enforcement of a term of post-release supervision ("PRS") by

DOCS and its employees.  Specifically, plaintiff claims that by
"implementing, promulgating, and enforcing and/or effectuating a
policy, practice, and custom pursuant to which plaintiff was
subject to PRS when imposition of PRS on him was never authorized
by any sentencing court, defendants have deprived [him of his]
rights guaranteed by the Fourteenth Amendment of the United
States Constitution [and] [d]efendants also conspired among
themselves to do so" (Attachment to Amended Complaint ("Amend.
Compl. Att."), at ¶ 24).  The defendants have moved to dismiss
the Complaint for failure to state a claim, pursuant to Rule
12(b)(6) of the Federal Rules of Civil Procedure (Docket Item
20).

        For the reasons set forth below, I respectfully recom-
mend that the defendants' motion to dismiss be granted.

II.   Facts

   A.   Plaintiff's Allegations[1]

        On June 13, 2000, plaintiff was convicted in the County
Court, Criminal Term, for the County of Rensselaer, New York
(McGrath, J.), upon a plea of guilty, to assault in the second
degree (Amend. Compl. Att. at 2-3).  Plaintiff was sentenced on
June 27, 2000, to a determinate term of imprisonment of two and
one-half years.  During his sentencing, the Court did not impose
a term of PRS to follow his determinate sentence -- although such
a term was mandated by New York Penal Law Section 70.45 -- nor
did an initial "Sentence and Commitment" report reflect the
imposition of the mandatory term of PRS (Amend. Compl. Att. at 3;
Exhibit A, A2, B annexed to Affirmation in Opposition to Motion,
dated Dec. 15, 2010 ("Aff. in Opp.") (Docket Item 27)).  Plain-
tiff alleges that only after he was taken into custody by DOCS
did he receive a "Time Computation Sheet" which informed him that

_____

     [1] The facts set forth herein are drawn from plaintiff's
amended complaint (Docket Item 4), the exhibits he attached to
his Affirmation in Opposition to Motion, dated Dec. 15, 2010
(Docket Item 27), and People v. Henderson, 22 A.D.3d 883, 884,
802 N.Y.S.2d 536, 537 (3d Dep't 2005), a state court decision
concerning one of the underlying state court criminal
proceedings.

a three-year period of PRS would follow his incarceration (Amend. Compl. Att. at 3).

Plaintiff alleges that he was released from custody on June 11, 2002 after having served six-sevenths of his determinate sentence and began serving a period of PRS (Amend. Compl. Att. at 3). On August 13, 2002, plaintiff was arrested for assault. Plaintiff told the arresting officers that he was Robert D.J. Henderson, his brother, and he subsequently signed a fingerprint card with that name. People v. Henderson, 22 A.D.3d 883, 884, 802 N.Y.S.2d 536, 537 (3d Dep't 2005). Consequently, plaintiff was indicted and charged with two counts of forgery in the second degree, and his parole officer charged him with multiple viola-tions of the conditions of his PRS (Amend. Compl. Att. at 3). Following a parole hearing held in October of 2002, plaintiff was sentenced to a thirty-six month term of imprisonment for violat-ing the conditions of his PRS; he was incarcerated pursuant to that sentence until he was found guilty of the two counts of forgery in the second degree and was sentenced on January 9, 2004 to concurrent indeterminate terms of imprisonment of three and one-half to seven years (Amend. Compl. Att. at 3). Thereafter, according to plaintiff, the remainder of plaintiff's sentence for violating the conditions of his PRS was added to the sentence he received for the forgery charges and plaintiff is currently

4

serving that sentence (Amend. Compl. Att. at 3).[2]  Although plaintiff is currently incarcerated, it is unclear whether he is currently incarcerated for violating the terms of his PRS or for one of his subsequent convictions.  The DOCS Inmate Information website indicates that plaintiff is currently incarcerated for the subsequent convictions.  See http://nysdoccslookup.doccs.ny.gov/ GCA00P00/WIQ1/WINQ000.

On August 12, 2008, following a letter from DOCS, dated June 7, 2008 (Exhibit C to Aff. in Opp.), informing the Rensselaer County Court that the New York Court of Appeals had held that the administrative imposition of a term of PRS was illegal, plaintiff was resentenced on the 2000 assault charges, to a term of two and one-half years imprisonment, as originally sentenced, without a term of PRS (Amend. Compl. Att. at 3; Exhibit D to Aff. in Opp.).

Plaintiff also alleges that despite raising the issue numerous times with the parole board, parole board members, prison staff, and correctional counselors and after filing and

_____

[2] The public records of the Rensselaer County Court also indicate that on September 22, 2004, plaintiff pleaded guilty to attempted promoting of prison contraband in the second degree and attempted assault in the second degree, and on October 27, 2004, plaintiff was sentenced to an indeterminate term of imprisonment of two to four years on each count, to run concurrently (Order, dated Mar. 16, 2010 (Docket Item 3) (Preska, D.J.), at 2).

appealing a grievance, numbered 46025-09, "defendants have chosen
to continue to ignore plaintiff's request to either be credited
with time spent in custody on [a violation of the conditions of
administratively imposed PRS] 'or' mon[e]tary damages for impris-
onment on alleged allegations of violating PRS when PRS was never
a part of a valid judicially imposed sentence in the [f]irst
place" (Amend. Compl. Att. at 2, 3-4).

        Plaintiff alleges that, during their tenure as high-
level officials at DOCS, the defendants were "responsible for the
appointment, training, supervision, and conduct of all DOCS
personnel [and] for enforcing the rules of DOCS and ensuring that
DOCS personnel obey the Constitution and laws of the United
States [and were] policy-maker[s] with respect to DOC's decisions
to administratively impose PRS" (Amend. Compl. Att. at 5).
Plaintiff further alleges that "[i]n flat defiance of the clear
constitutional commands of [Hill v. United States ex. rel.
Wampler, 298 U.S. 460 (1936) and Earley v. Murray, 451 F.3d 71
(2d Cir. 2006),] defendants have promulgated, implemented,
enforced, and/or failed to rectify a policy, practice and cus-
tom[] mandating the administrative imposition and enforcement of
PRS on plaintiff without authorization from [the] sentencing
court," "impos[ed] illegal and onerous supervision," and "impris-
oned plaintiff . . . who was accused of violating PRS conditions

6

on August 12, 2002 for being charged with [a] felony" (Amend.
Compl. Att. at 1-2, 6). "As a direct result . . . plaintiff has
suffered actual damages in forms involving . . . mental anguish,
pain and suffering" (Amend. Compl. Att. at 6).

Plaintiff seeks "a judgment declaring that defendants
have committed the violations of the law alleged in this action,"
"[a]n order preliminar[ily] and permanently enjoining and direct-
ing defendants Fischer and [A]nnucci to lift all effects of PRS,"
compensatory and punitive damages, costs, and attorneys fees
(Amend. Compl. Att. at 7-8).

III.  Analysis

A.  Standards Applicable to
    a Motion to Dismiss
    Pursuant to Rule 12(b)(6)

The standards applicable to a motion to dismiss pursu-
ant to Rule 12(b)(6) are well-settled and require only brief
review.

When deciding a motion to dismiss under Rule
12(b)(6), [the court] must accept as true all
well-pleaded factual allegations of the complaint and
draw all inferences in favor of the pleader. See City
of Los Angeles v. Preferred Communications, Inc., 476
U.S. 488, 493, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986);
Miree v. DeKalb County, 433 U.S. 25, 27 n.2, 97 S.Ct.
2490, 53 L.Ed.2d 557 (1977) (referring to "well-pleaded
allegations"); Mills v. Polar Molecular Corp., 12 F.3d
1170, 1174 (2d Cir. 1993). "'[T]he complaint is deemed

7

to include any written instrument attached to it as an
exhibit or any statements or documents incorporated in
it by reference.'"  Int'l Audiotext Network, Inc. v.
Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)
(quoting Cortec Indus., Inc. v. Sum Holding L.P., 949
F.2d 42, 47 (2d Cir. 1991)).  The Court also may con-
sider "matters of which judicial notice may be taken."
Leonard T. v. Israel Discount Bank of New York, 199
F.3d 99, 107 (2d Cir. 1999) (citing Allen v. WestPoint-
-Pepperill, Inc., 945 F.2d 40, 44 (2d Cir. 1991)).  In
order to avoid dismissal, a plaintiff must do more than
plead mere "[c]onclusory allegations or legal conclu-
sions masquerading as factual conclusions."  Gebhardt
v. Allspect, Inc., 96 F. Supp. 2d 331, 333 (S.D.N.Y.
2000) (quoting 2 James Wm. Moore, Moore's Federal
Practice ¶ 12.34[a][b] (3d ed. 1997)).

Hoffenberg v. Bodell, 01 Civ. 9729 (LAP), 2002 WL 31163871 at *3

(S.D.N.Y. Sept. 30, 2002) (Preska, D.J.); see also In re Elevator

Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007); Johnson &

Johnson v. Guidant Corp., 525 F. Supp. 2d 336, 345-46 (S.D.N.Y.

2007) (Lynch, then D.J., now Cir. J.).

The Supreme Court has clarified the proper mode of

inquiry for evaluating a motion to dismiss pursuant to Rule

12(b)(6), which uses as its starting point the principle that

"[a] pleading that states a claim for relief must contain . . . a

short and plain statement of the claim showing that the pleader

is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

[I]n Bell Atl[antic] Corp. v. Twombly, 550 U.S. 544,
127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court
disavowed the well-known statement in Conley v. Gibson,
355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)
that "a complaint should not be dismissed for failure
to state a claim unless it appears beyond doubt that

8

> the plaintiff can prove no set of facts in support of
> his claim which would entitle him to relief."  550 U.S.
> at 562.  Instead, to survive a motion to dismiss under
> <u>Twombly</u>, a plaintiff must allege "only enough facts to
> state a claim to relief that is plausible on its face."
> <u>Id</u>. at 570.

<u>Talley v. Brentwood Union Free Sch. Dist.</u>, No. 08-790 (DRH), 2009

WL 1797627 at *4 (E.D.N.Y. June 24, 2009).

> While a complaint attacked by a Rule 12(b)(6) motion to
> dismiss does not need detailed factual allegations, a
> plaintiff's obligation to provide the grounds of his
> entitlement to relief requires more than labels and
> conclusions, and a formulaic recitation of the elements
> of a cause of action will not do.  Factual allegations
> must be enough to raise a right to relief above the
> speculative level, on the assumption that all the
> allegations in the complaint are true (even if doubtful
> in fact).

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations,

internal quotations and alterations omitted).

In evaluating a motion under Rule 12(b)(6), the court

must determine whether the plaintiff has alleged any facially

plausible claims.  <u>See</u> <u>Smith v. NYCHA</u>, 410 F. App'x 404, 405-06

(2d Cir. 2011).  A claim is plausible when its factual content

"allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.  The plausibility

standard is not akin to a 'probability requirement,' but it asks

for more than a sheer possibility that a defendant has acted

unlawfully."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937,

1949 (2009) (citations omitted).  "Where a complaint pleads facts

that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of enti-tlement to relief." Ashcroft v. Iqbal, supra, 129 S.Ct. at 1949 (internal quotations omitted). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to re-lief.'" Ashcroft v. Iqbal, supra, 129 S.Ct. at 1950, quoting Fed. R. Civ. P. 8(a)(2).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, supra, 129 S.Ct. at 1949; see also Reed Const. Data Inc. v. McGraw-Hill Cos., Inc., 745 F. Supp. 2d 343, 349 (S.D.N.Y. 2010) (Sweet, D.J.). As a result, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclu-sions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, supra, 129 S.Ct. at 1950.

Where, as here, a plaintiff proceeds pro se, the complaint must be liberally construed to raise the strongest claims that the allegations suggest. Pabon v. Wright, 459 F.3d

10

241, 248 (2d Cir. 2006); <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d

Cir. 1994); <u>see</u> <u>also</u> <u>Hughes v. Rowe</u>, 449 U.S. 5, 9 (1980) (<u>pro</u> <u>se</u>

pleadings should be held "to less stringent standards than formal

pleadings drafted by lawyers" (citation omitted)).  This rule

applies "with particular stringency to [<u>pro</u> <u>se</u>] complaints of

civil rights violations." <u>Phillip v. Univ. of Rochester</u>, 316

F.3d 291, 293-94 (2d Cir. 2003).

B.   <u>Plaintiff's Claims</u>

Plaintiff states that "[t]his action arises under the

Fourteenth Amendment to the United States Constitution and Civil

Rights Act of 1871, 42 U.S.C. § 1983" (Amend. Compl. Att. at 2).

Section 1983 provides that:

> Every person who, under color of any statute, ordi-
> nance, regulation, custom, or usage, of any State . . .
> subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws,
> shall be liable to the party injured . . . .

In order to state a claim under Section 1983, "a

plaintiff must allege (1) that the challenged conduct was attrib-

utable at least in part to a person acting under color of state

law, and (2) that such conduct deprived the plaintiff of a right,

privilege, or immunity secured by the Constitution or laws of the

United States." <u>Dwares v. City of N.Y.</u>, 985 F.2d 94, 98 (2d Cir. 1993); <u>accord</u> <u>Snider v. Dylaq</u>, 188 F.3d 51, 53 (2d Cir. 1999).

Broadly construed, the amended complaint alleges that defendants violated plaintiff's constitutional rights by (1) administratively imposing a term of PRS; (2) incarcerating him for allegedly violating the illegally imposed term of PRS; and (3) failing to credit the time plaintiff served for violating the illegally imposed term of PRS against the other sentences imposed on plaintiff.

In their motion to dismiss, defendants argue that: (1) plaintiff has not sufficiently alleged defendants' personal involvement in the alleged constitutional deprivation; (2) plaintiff fails to state a claim for unlawful imprisonment; (3) plaintiff's claims are barred by <u>Heck v. Humphrey</u>, 512 U.S. 477, 481-82 (1994); and (4) defendants are entitled to qualified immunity.

     1.    Claims Against
            Defendants In Their
            <u>Official Capacities</u>

Plaintiff asserts his claims against Fischer and Annucci in their individual and official capacities and against LeClaire and Goord in their individual capacities only.

To the extent plaintiff is seeking damages against defendants Fischer and Annucci in their official capacities, plaintiff is suing the State of New York, Kentucky v. Graham, 473 U.S. 159, 165-66 (1985), Brandon v. Holt, 469 U.S. 464, 471 (1985), and his claims against Fischer and Annucci in their official capacities must be dismissed because states are not "persons" within the meaning of Section 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Hardy v. Fischer, 701 F. Supp. 2d 605, 607 n.1 (S.D.N.Y. 2010) (Stein, D.J.).

To the extent plaintiff is suing Fischer and Annucci in their official capacities for prospective injunctive relief in the form of a grant of credit for the time served on his PRS violation, plaintiff has asserted claims against persons within the meaning of Section 1983. "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for injunctive relief are not treated as actions against the state.'" Will v. Mich. Dep't of State Police, supra, 491 U.S. at 71 n.10, quoting Kentucky v. Graham, supra, 473 U.S. at 167 n.14.

Thus, plaintiff's claims for damages against defendants in their official capacities should be dismissed for failure to state a claim.

13

2.   Plaintiff's Damages
     Claims Are Barred by the
     <u>Doctrine of Qualified Immunity</u>

To the extent plaintiff is seeking damages against defendants in their individual capacities, his claims are barred by the doctrine of qualified immunity.  <u>Scott v. Fischer</u>, 515 F.3d 100 (2d Cir. 2010).

> A government official may be shielded from liability under the doctrine of qualified immunity "if his conduct did not violate clearly established rights or if it would have been objectively reasonable for the official to believe his conduct did not violate plaintiff's rights."  <u>Reuland v. Hynes</u>, 460 F.3d 409, 419 (2d Cir. 2006) (citation omitted).
>
> In determining whether a defendant is entitled to qualified immunity, the relevant inquiry is whether the right that was allegedly violated was "clearly established when the conduct occurred."  <u>Saucier v. Katz</u>, 533 U.S. 194, 199, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  "The essence of the principle is that officers sued in a civil action for damages under 42 U.S.C. § 1983 have the same right to fair notice as do defendants charged with a criminal offense."  <u>Pena v. DePrisco</u>, 432 F.3d 98, 115 (2d Cir. 2005) (citation omitted).  In assessing a qualified immunity claim, a court must consider:
>
>> (1) whether the right in question was defined with reasonable specificity; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.
>
> [<u>Pena v. DePrisco</u>, 432 F.3d at 115].

14

Henry v. Fischer, 10 Civ. 3822 (DLC), 2011 WL 5223600 at *3-*4 (S.D.N.Y. Nov. 11, 2011) (Cote, D.J.).  Because none of the defendants' actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known," Ortiz v. Jordan, --- U.S. ---, ---, 131 S.Ct. 884, 888 (2011) (citation omitted), the defendants are entitled to qualified immunity.

The precise issue of the availability of qualified immunity to damages claims based on DOCS practice of administratively imposing terms of PRS was addressed by the Court of Appeals in Scott v. Fischer, 616 F.3d 100 (2d Cir. 2010).  An understanding of the reasoning underlying that decision requires a brief review of the history of administratively imposed terms of PRS in New York.

In August, 1998, the New York State Legislature enacted "Jenna's Law," which "mandated that determinate sentences for all violent offenders must include a separate period of post-release supervision as part of the sentence." Henry v. Fischer, supra, 2011 WL 5223600 at *4, citing N.Y. Penal Law § 70.45(1); see also Albergottie v. New York City, 08 Civ. 8331 (SHS), 2011 WL 519296 at *2 (S.D.N.Y. Feb. 15, 2011) (Stein, D.J.).  Despite this mandate, many New York courts failed to impose a term of PRS when sentencing violent offenders.  "In such cases, DOCS administra-

15

tively imposed a term of PRS [and] New York State courts rou-
tinely upheld the resulting sentences." Henry v. Fischer, supra,
2011 WL 5223600 at *4, citing Deal v. Goord, 8 A.D.3d 769, 769-
70, 778 N.Y.S.2d 319, 320 (3d Dep't 2004), and People v. Crump,
302 A.D.2d 901, 902, 753 N.Y.S.2d 793, 793 (4th Dep't 2003);
Scott v. Fischer, supra, 616 F.3d at 104 ("New York state courts
had repeatedly ratified administrative imposition of PRS.").

On June 9, 2006, the United States Court of Appeals for
the Second Circuit decided Earley v. Murray, 451 F.3d 71 (2d Cir.
2006), which held that "if a sentencing court does not explicitly
impose a term of PRS on a criminal defendant, it is unconstitu-
tional for [DOCS] subsequently to impose one, irrespective of
whether [DOCS] is acting pursuant to a statute that makes such
PRS a mandatory part of the sentence . . . ." Scott v. Fischer,
supra, 616 F.3d at 105-06.

Notwithstanding the Second Circuit's decision in
Earley, at least two Departments of New York's Appellate Division
continued to uphold the administrative imposition of  terms of
PRS. Scott v. Fischer, supra, 616 F.3d at 107, citing Garner v.
N.Y. State Dep't of Corr. Servs., 39 A.D.3d 1019, 831 N.Y.S.2d
923 (3d Dep't 2007) and People v. Thomas, 35 A.D.3d 192, 826
N.Y.S.2d 36 (1st Dep't 2006). The New York Court of Appeals did
not find the administrative imposition of a term of PRS to be

16

illegal until 2008.  <u>Garner v. N.Y. State Dep't of Corr. Servs.</u>, 10 N.Y.3d 358, 859 N.Y.S.2d 590, 889 N.E.2d 459 (2008).

In <u>Scott</u>, the Court of Appeals for the Second Circuit surveyed the foregoing history and concluded that in light of the judicial confusion concerning the validity of judicially imposed PRS after <u>Earley</u>, "qualified immunity might well continue to shield state officials acting pursuant to [Jenna's Law]," and that it certainly shielded state officials whose conduct predated the decision in <u>Earley</u>.  <u>Scott v. Fischer</u>, <u>supra</u>, 616 F.3d at 108.[3]

<u>Scott</u> is controlling here and mandates the dismissal of plaintiff's claim for damages.  All of the putative constitutional deprivations[4] plaintiff alleges occurred prior to the

---

[3] Plaintiff asserts, as the Second Circuit found in <u>Earley</u>, that the Supreme Court's 1936 decision in <u>Wampler</u> clearly established that "the imposition of an extra-judicial sentence violates a defendant's constitutional rights" (Amend. Compl. Att. at 1).  However, <u>Earley</u> was a habeas proceeding and "[t]he conclusion, in the course of such a section 2254 review, that a legal proposition was 'clearly established' for purposes of its application by professional state court judges does not require conclusion that it was 'clearly established' in the qualified immunity context, which governs the conduct of government officials who are likely neither lawyers nor legal scholars." <u>Scott v. Fischer</u>, <u>supra</u>, 616 F.3d at 106.

[4] To the extent the complaint can be read to assert a claim based on DOCS' refusal to grant plaintiff credit for time he served pursuant to a violation of PRS, as explained in the following section, the claim is not cognizable under Section 1983 and can only be raised by way of a habeas corpus petition.

Second Circuit's decision in <u>Earley</u> on June 9, 2006,[5] and, pursu-
ant to <u>Scott</u>, they are, therefore, entitled to qualified immu-
nity.  Furthermore, DOCS notified the appropriate sentencing
court of the clarification in the law and of the need to
resentence plaintiff, on June 6, 2008 -- prior to the June 30,
2008 date on which the Second Circuit found state actors to have
an affirmative duty to rectify unconstitutionally imposed PRS[6]
(Exhibit C to Aff. in Opp.).[7]

_____

[5] Plaintiff was sentenced for two counts of forgery in the
second degree, on January 9, 2004, presumably terminating the
sentence for a violation of the terms of his PRS.

[6] The Second Circuit held that there was no statutory method
by which government officials could seek to rectify the
administrative imposition of PRS, nor an "affirmative legal
duty," until June 30, 2008 when Corrections Law Section 601-d
became effective.  <u>Scott v. Fischer</u>, <u>supra</u>, 616 F.3d at 109-10.

[7] The plaintiff's argument, based on <u>Donald v. State</u>, 24
Misc.3d 329, 875 N.Y.S.2d 435 (N.Y. Ct. Cl. 2009), that qualified
immunity should not apply (Plaintiff's Memorandum of Law in
Support of Aff. in Opp., dated Sept. 21, 2011 (Docket Item 23)),
is unavailing.  The Court in <u>Donald</u> was examining whether a state
law privilege protected New York State and its agencies from
having to compensate a defendant who received an administratively
imposed term of PRS, and, in any event, the Court of Claims
decision was subsequently overruled by the Appellate Division.
<u>See</u> <u>Donald v. State</u>, 73 A.D.3d 1465, 900 N.Y.S.2d 818 (4th Dep't
2010) (finding privilege to apply).

Accordingly, plaintiff's damages claims against the defendants in their individual capacities should be dismissed because they are barred by the doctrine of qualified immunity.[8]

           3.   Plaintiff's Claims for
                Equitable Relief Are
                <u>Barred by Heck v. Humphrey</u>

To the extent the amended complaint can be read as seeking injunctive relief against the defendants for failing to credit the time plaintiff spent in custody for violating the terms of his PRS against the other sentences imposed upon him, the amended complaint is barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).

<u>Heck</u> and its progeny teach that "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . ." <u>Muhammad v. Close</u>, 540 U.S. 749, 750 (2004), <u>citing</u> <u>Preiser v. Rodriquez</u>, 411 U.S. 475, 500 (1973).

To the extent the amended complaint can be construed as seeking to have the time plaintiff spent in custody for violating the terms of his PRS credited against his other sentences,

---

[8] Although other arguments raised by the defendants, in favor of dismissal, appear to have merit, I need not reach those arguments because dismissal is plainly appropriate in light of the Court of Appeals' decision in <u>Scott</u>.

19

plaintiff is, in essence, challenging the manner in which DOCS has calculated the duration of his sentence.  It is well settled that such challenges can only be brought by way of a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 which requires, among other things, that a petitioner first exhaust all of his state remedies.  <u>Abbott v. Pa. Dep't of Corr.</u>, 426 F. App'x 42, 43 (3d Cir. 2011); <u>Roberts v. Wilson</u>, 259 F. App'x 226, 229 (11th Cir. 2007); <u>Royal v. Durison</u>, 254 F. App'x 163 (3d Cir. 2007); <u>Benjamin v. Superintendent of Collins Corr. Fac.</u>, 10-CV-6675Fe, 2011 WL 3555807 at *1 (W.D.N.Y. Aug. 5, 2011); <u>McCrary v. Fischer</u>, 9:08-CV-0366, 2008 WL 2167991 at *2 (N.D.N.Y. May 21, 2008); <u>Robinson v. Connell</u>, 9:05-CV-1428 (GLS)(GJD), 2008 WL 783360 at *2 (N.D.N.Y. Mar. 20, 2008); <u>Baldwin v. Armstrong</u>, 3:01CV1263 (RNC), 2002 WL 31433288 at *2 (D. Conn. Sept. 12, 2002); <u>Hill v. Goord</u>, 63 F. Supp. 2d 254, 260-61 (E.D.N.Y. 1999); <u>Benson v. N.J. State Parole Bd.</u>, 947 F. Supp. 827, 832 (D.N.J. 1996).

Thus, to the extent plaintiff is seeking to accelerate his release date based on time he spent in custody as a result of an administratively imposed period of PRS, the amended complaint must be dismissed without prejudice to an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

C.   <u>Declaratory Relief</u>

In addition to his claim for damages, plaintiff re-
quests a judgment declaring that defendants have committed the
violations of law alleged in this action" (Amend. Compl. Att. at
7).  The Declaratory Judgment Act ("DJA") provides:  "In a case
of actual controversy within its jurisdiction . . . any court of
the United States . . . may declare the rights and other legal
relations of any interested party seeking such declaration,
whether or not further relief is or could be sought."  28 U.S.C.
§ 2201(a).  The DJA "by its express terms vests a district court
with discretion to determine whether it will exert jurisdiction
over a proposed declaratory action or not."  <u>Dow Jones & Co., v.</u>
<u>Harrods Ltd.</u>, 346 F.3d 357, 359 (2d Cir. 2003).  "Courts have
consistently interpreted this permissive language as a broad
grant of discretion to district courts to refuse to exercise
jurisdiction over a declaratory action they would otherwise be
empowered to hear."  <u>Dow Jones & Co., v. Harrods Ltd.</u>, <u>supra</u>,
346 F.3d at 359.  In deciding whether to hear a declaratory
judgment action, a district court should consider "(1) whether
the judgment will serve a useful purpose in clarifying or set-
tling the legal issues involved; and (2) whether a judgment would

finalize the controversy and offer relief from uncertainty."  <u>Dow</u>
<u>Jones & Co., v. Harrods Ltd.</u>, <u>supra</u>, 346 F.3d at 359.

        Here, a declaratory judgment "would not clarify the
legal issues nor offer relief from uncertainty because the
defendants are entitled to qualified immunity on all those claims
that are plausible," and viable, on the face of the complaint.
<u>Henry v. Fischer</u>, <u>supra</u>, 2011 WL 5223600 at *6-*7.  Plaintiff's
request for declaratory relief should, therefore, be denied.

IV.  <u>Conclusion</u>

        For all the foregoing reasons, I respectfully recommend
that defendants' motion (Docket Item 20) be granted in its
entirety.  If accepted, this Report and Recommendation will
result in the dismissal of all claims in this action.

V.  <u>Objections</u>

        Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2)
of the Federal Rules of Civil Procedure, the parties shall have
fourteen (14) days from the date of this Report and Recommenda-
tion to file written objections.  <u>See</u> <u>also</u> Fed. R. Civ. P. 6(a)
and 6(d).  Such objections (and responses thereto) shall be filed
with the Clerk of the Court, with courtesy copies delivered to
the chambers of the Honorable Paul A. Crotty, United States

District Judge, 500 Pearl Street, Room 735, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Crotty.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:   New York, New York
         January 18, 2012

                                   Respectfully submitted,


                                   _____
                                   HENRY PITMAN
                                   United States Magistrate Judge


Copies mailed to:

Mr. Thomas A. Henderson
00-R-4561
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13204

Michael J. Keane, Esq.
Office of the Attorney General
 of the State of New York
24th Floor
120 Broadway
New York, New York 10271